THE STATE OF KANSAS v. H. H. STANDISH.

37 643.
41 92.
37 643
43 241

1. INTOXICATING LIQUOR — *Lawful Uses.* A person in the lawful and *bona fide* possession of intoxicating liquor may use it as he sees fit; he may drink it himself or give it away, but he cannot by any shift or device in selling or giving away lawfully evade the provisions of the statute prohibiting the manufacture and sale of intoxicating liquors.

2. ———— *No Conviction, When.* A person cannot be convicted under § 16 of the prohibitory act of 1881 for keeping in his house, store, or in a wareroom thereof, intoxicating liquor for his own use, or for giving the same away, providing the giving away is done honestly and in good faith, and not as a shift or device to evade the provisions of said act.

### Appeal from Miami District Court.

PROSECUTION for a violation of the prohibitory liquor law. From a judgment against him at the June Term, 1887, the defendant *Standish* appeals. The material facts are stated in the opinion.

*Jas. D. Snoddy*, and *W. H. Browne*, for appellant.

*W. H. Sheldon*, county attorney, for The State.

The opinion of the court was delivered by

HORTON, C. J.: Standish was convicted of a violation of §16 of the act to prohibit the manufacture and sale of intoxicating liquors. (Laws of 1881, ch. 128.) He was sentenced to be confined in the county jail of his county for forty-five days, and to pay the costs of the prosecution. He appeals to this court.

It appears that, on June 11, 1887, the grand jury of Miami county returned an indictment against him, containing three counts. The first count charged that at a certain place in Miami county he did, "on or about the month of May, 1887, unlawfully barter, sell, and give away intoxicating liquors without having a permit," etc. The second count charged that at the same place as specified in the first count, he did, "on or about the month of May, 1887, unlawfully aid, assist and abet in keeping and maintaining a place and room in which intoxicating liquors were received and kept for the purpose of use, barter, and to give away as a beverage without having a permit," etc. The third count charged that at the same place as specified in the first count he did, "on or about the month of May, 1887, unlawfully keep and maintain a room and place in which intoxicating liquors were received and kept for the purpose of distribution and division among members of a club and association without having a permit," etc.

Standish moved the court to quash the indictment, for the reason that it was not a true bill, alleging that it was not the

finding of twelve members of the grand jury, as twelve never concurred therein. This motion was attempted to be supported by the affidavits of five grand jurors. The county attorney objected to the introduction of the affidavits, upon the hearing of the motion, and this objection was sustained by the court. Thereupon the motion to quash was overruled. In this ruling there was no error. Section 92 of the criminal code provides:

"No member of a grand jury shall be obliged or allowed to testify or declare in what manner he or any other member of the grand jury voted on any question before them, or what opinions were expressed by any juror in relation to any such question."

Section 97 of the same code further provides:

"Indictments, found by a grand jury, shall be presented by their foreman, in their presence, to the court, and shall be filed, and remain as records of such court."

Under these and other provisions of the statute, a grand juror cannot be permitted to state who did or did not vote, for the purpose of showing that the proper number did not concur in finding the indictment; nor to state the fact that they did not concur. In *The State v. Baker*, 20 Mo. 338, Judge Ryland, speaking for the court, said that—

"If the members of a grand jury were allowed to testify whether they or their fellow-members did or did not vote, for the purpose of showing that twelve did not concur in finding the indictment, a corrupt grand juror would withhold his vote on purpose, in order to be used as a witness; that to permit this course to be allowed, every inducement for a guilty man and his friends to tamper with the grand jury is at once presented; that by our law, when the grand jurors by their foreman, in presence of the body, return an indictment into court as a true bill, it then becomes a part of the records of the court, and it should not be subjected to the attacks of parol proof by members of the very body who, in presence of their foreman, stood by in silence and saw him present it to the court; and that incalculable mischief might result to the public at large from such course of proceeding."

Again, in *The State v. Gibbs*, 39 Iowa, 318, it was held that "affidavits of grand jurors that they did not assent to the

finding of an indictment, are not admissible in support of a motion to set it aside."

The jury impaneled in this case found Standish not guilty upon the first count, but guilty upon the second and third counts. After the verdict the third count was *nolle prosequied* by the county attorney, and Standish was sentenced upon the second count only. The court instructed the jury, among other things, as follows: "The giving away of intoxicating liquors to be used as a beverage is an unlawful selling, within the provisions of the laws of Kansas." And also, that—

"If you find beyond a reasonable doubt that the defendant, at the place mentioned in the second count of the indictment, did assist and abet in keeping and maintaining a place and room in which intoxicating liquors were received and kept for the purpose of use, barter, or to be given away, as a beverage, without having a permit to sell the same, you will find him guilty upon the second count."

The counsel of Standish requested the court to instruct the jury that "anyone in the lawful and *bona fide* possession of beer, may use it himself, or may give it away, without being guilty of a violation of the law, provided he does not give it away to evade any of the provisions of the prohibitory law." Also that "the *bona fide* and honest giving away of intoxicating liquors by one who is lawfully in possession of the liquors is not a violation of the law." These last instructions were refused, and nothing similar to them was given.

Upon the evidence introduced upon the trial, the instructions to the jury were erroneous and misleading. It appears that Standish was engaged in the boot-and-shoe business at Paola, in Miami county, in May, 1887, keeping a stock of boots and shoes to the amount of about seven thousand dollars. There was beer kept in the back room or wareroom of the store building, which was used by Standish himself, and was also given away to several persons. It also appears that one or two kegs of beer were purchased by two or three persons, who "chipped in" and sent for the beer. These persons were permitted to place the kegs of beer in the back room or wareroom of the store, and were also permitted to come

and drink the same. There was no evidence showing or tending to show that Standish ever sold or bartered any beer or other intoxicating liquor at the place described in the indictment, or anywhere else, or that any other person ever sold or bartered any beer or other intoxicating liquor in his store or wareroom.

Any person in the lawful and *bona fide* possession of intoxicating liquor may use it as he sees fit; he may drink it, or give it away, or he may use it in any other lawful manner, or for any other proper purpose to which his inclinations may lead him. (*The State v. Barrett*, 27 Kas. 219.) The limitation is that a person in giving away intoxicating liquor shall not do so to evade the provisions of the prohibitory act: in other words, any shift or device adopted in selling or giving away such liquors, to evade the provisions of that act, is prohibited. (*The State v. Nickerson*, 30 Kas. 545.)

It seems to be admitted that Standish was the proprietor and keeper of the store and wareroom where the beer complained of was kept; and, therefore, under the instructions of the court, if he was in the lawful and *bona fide* possession of the beer in the store or wareroom and drank any portion of it himself, or gave away a glass or a bottle of it to a friend, the jury were required to return a verdict of guilty. This is not the law. If Standish directly or indirectly kept or maintained by himself, or with others; or if he aided, assisted, or abetted in keeping or maintaining any club room, or other place like a club room, or a place of some similar kind or character, in which intoxicating liquors were received and kept, for the purpose of use, gift, barter, or sale, as a beverage, or for distribution or division among the members of the club or association, he could be convicted therefor. (*Rice v. The State*, 3 Kas. 141; *White v. The State*, 20 Wis. 246; *The State v. Gresham*, 2 S. W. R. 223.)

The instructions in this case, however, were not sufficiently limited to embrace the offense attempted to be described in the second count of the indictment under the provisions of §16 of the prohibitory act. They allowed the jury to find Standish

guilty, if he used the beer himself, or gave it away, although not done in violation of the statute, nor to evade any of the provisions thereof.

The judgment of the district court will be reversed, and the cause remanded for a new trial upon the second count of the indictment.

All the Justices concurring.