Maxwell, J.
Appellant was prosecuted before the police magistrate of the town of Sterling for the alleged violation of an ordinance prohibiting the selling or giving away of intoxicating liquors within the corporate limits of the town, found guilty, fined and appealed to the county court where a jury''trial *422 resulted in a verdict of guilty and the assessment of a fine of $150.00, upon which judgment was rendered and this appeal taken therefrom.
The title of the ordinance is “An ordinance concerning the selling or giving away of intoxicating, malt, vinous, mixed or fermented liquors.” Pertinent sections of the ordinance are:
‘ ‘ Section 1. All persons are hereby prohibited from selling intoxicating, malt, vinous, mixed or fermented liquors, within the corporate limits of the town of Sterling or within one mile of the outer boundaries thereof, except as hereinafter provided; and all persons are hereby prohibited from giving away any such intoxicating, malt, vinous, mixed or fermented liquors, in any street, alley, public park, hotel, boarding house, eating house, saloon, restaurant, place of traffic or place of public resort, or upon any' vacant lot within the town of Sterling, or within one mile of the outer boundaries of said town.”
Section 2 relates to permits to druggists for selling liquor for medicinal purposes only, upon the prescription of a physician, which prescription shall designate the name of the person for whom the liquor is prescribed, kind of liquor prescribed, by its usual and ordinary name in the English language, and provides for the keeping a book in which every prescription shall be posted, which book shall be open at all times during business hours for examination by any and all adult residents of the town.
“Sec. 3. Any druggist or other person who shall sell or give away any intoxicating, malt, vinous, mixed or fermented liquors, within the corporate limits of said town or within one mile of the outer boundaries thereof, contrary to the provisions of this ordinance shall, on conviction thereof, be fined for each offense not less than fifty ($50) dollars, nor *423 more than three hundred ($300) dollars, and costs of suit.”
Upon the trial it was proven that appellant conducted a place of business on Main street, in the town of Sterling, where he sold cigars, tobacco, fruit, confectionery, “soft drinks,” etc.; that across the rear end of the room in which this business was conducted, a cloth curtain was stretched on a wire which hung several feet from the ceiling; that on the birthday of appellant he had a keg of beer in the room back of this curtain; that a number of persons there present, invited and uninvited, including the person named in the complaint, in the presence and upon the invitation of appellant, partook of beer drawn from the keg; that the beer was free to all who desired to partake of it, and was given by appellant as a treat to his friends. It also appears that previous to the alleged violation of the ordinance, the appellant con-, suited the police magistrate and was by him advised that his proposed entertainment would be a violation of the ordinance and subject him to the penalty imposed thereby.
■ Appellant did not testify at the trial.
Appellant requested the following instructions, which were refused:
“1. You are further instructed, that if you find the defendant guilty of giving away some beer to witness, Howard Huffman, on or about' the 22d day of July, A. D. 1899, it then devolves upon you to find whether or not this was given away by defendant herein for the purpose of gain. If . not, then you should find the defendant not guilty. ’ ’
■ “2. You are further instructed, that the mere giving away of intoxicating liquors for the purpose of a treat to one’s friends is not a violation of the ordinance, and is not to be considered as a violation of the ordinance, unless it is given as a trick, device, *424 or subterfuge to evade the provisions of the statute. ’ ’
The court instructed the jury in substance, that the ordinance introduced was valid; that if the jury believed from the evidence that the defendant, having no permit or license therefor, on or about the date named in the complaint, at his place of business within the town of Sterling, gave way beer to the person named in the complaint, they should find him guilty.
The only serious contention of appellant is, that it clearly appears that the act complained of was a “treat” upon his birthday to his friends, without any thought of gain or profit or any attempt or intent to evade the law, he not being engaged in the liquor traffic. That the “giving away” of the beer by him, as shown by the testimony, was not within the meaning or intention of the ordinance, and that, therefore, he was not guilty of a violation thereof; that the instructions given weré erroneous, and that the instructions refused should have been given.
In support of appellant’s position counsel have cited a number of authorities.
In Wood v. Territory, 1 Ore. 223, "Wood was indicted for selling liquor without a license. Section 6 of the act relating to the granting of licenses to sell spirituous liquors provides, “that if any person or persons shall bárter, sell or dispose of, in any manner, any spirituous liquor, without first having obtained a license, ’ ’ etc., ‘ ‘ shall be fined, ’ ’ etc. On the trial, the defendant asked the court to instruct the jury, “that if the liquor was gratuitously given, without consideration, the defendant could not be convicted,” which instruction the court declined to give, but instructed them, “if the liquor was given gratuitously it would sustain the‘indictment equally as if it had been sold and paid for.” The supreme court said: “We think there was error in the refusal of *425 the court to instruct the jury as asked, and, also, in the instruction given. The statute was intended to regulate the traffic in spirituous liquors. To dispose of liquor in any manner might, unqualified by anything else, mean the giving of it away; but in view of the whole statute, we think it means to part with it for some consideration or with some motive of gain. Clearer and stronger language is necessary to make it a crime for one man to give another a glass of spirituous liquor. Where it is intended to prohibit the giving of a thing as well as the selling, the word ‘give,’ or some equivalent term, is employed * * • * The expression, ‘ to dispose of in any manner, ’ seems intended to reach those cases where persons, by some artifice or indirection, attempt to cover up a sale, and so evade the penalties of the law.”
In Albrecht v. The People, 78 Ill. 510, the facts were, that defendant was the owner and operator of. a brewery; that he did not keep a dram shop, nor did he sell his beverage to be drunk on the premises; that the person to whom it is alleged he sold or gave one or more glasses of beer, came to see him while he was in ill health, lying on the lounge in his house, apart from his brewery, for the purpose of transacting business with him; that while there defendant sent to the brewery for beer and proffered it to his visitor as an act of hospitality. The act under which defendant was prosecuted was entitled, “An act to provide for the licensing of and against the evils arising from the sale of intoxicating liquors,” the 6th section of which provides that “Whoever, by himself or his agent or servant, shall sell or give intoxicating liquor * * * to any person intoxicated, or who is in the habit of getting intoxicated, shall, for each offense, be fined,” etc. Some testimony was introduced to show that the person to whom the beer was given was intoxicated. The court held that the act *426 complained of was not within the intent and meaning of the legislature, and that the testimony failed to prove that the person to whom the beer was given was intoxicated, and upon these grounds reversed the case.
Cruse v. Aden, 127 Ill. 231. This was a civil action to recover damages for the death of the husband of plaintiff, alleged to have been caused by his intoxication, to which intoxication defendant contributed. The action was prosecuted under and by virtue of the provisions of section 9 of “An act to provide for the licensing of and against the evils arising from the sale of intoxicating liquors.” It appeared from the evidence that defendant was not in any way engaged in the liquor traffic; that he met the husband of plaintiff, who was not then intoxicated, at or near a polling place on election day, and gave •him two drinks of whiskey out of a flask which he carried; that the party to whom the whiskey had been given subsequently became intoxicated, and met his death by reason of a fall from his horse while on his way home. After an elaborate discussion of the statute involved and the citation of numerous authorities, held: That the above-entitled act did not apply to persons who are not either directly or indirectly, or in any way or to any extent, engaged in the liquor traffic; and that the right of action given by section 9 of said act is not intended to be given against a person who, in his own house or elsewhere, gives a glass of intoxicating liquor to a friend as a mere act of courtesy and politeness, and without any purpose or expectation of pecuniary gain or profit.
In State v. Standish, 37 Kan. 643, it appears that Standish was engaged in the boot and shoe business; that two or three other persons “chipped in” and purchased one or two kegs of beer; that the beer was kept in a back room or wareroom of the store *427 building used by Standisb; that tbe beer was used by Standisb himself, and was also given away to several persons. There was no evidence to show, or tending to show, that Standish ever sold or bartered any beer or other intoxicating liquor at the place named in the indictment, or anywhere else, or that any other person sold or bartered beer or other intoxicating liquor in his store or wareroom. There were three counts in the indictment. The second count charged “that on or about the month of May, 1887, defendant did unlawfully aid, assist and abet in keeping and maintaining a place and room in which intoxicating liquors were received for the purpose of use, barter and to give away as a beverage without having a permit. ’ ’
The court instructed the jury, among other things, as follows:
“The giving away of intoxicating liquor to be used as a beverage is an unlawful selling within the provisions of the laws of Kansas. ” .
And also, ‘ ‘ That if you find beyond a reasonable doubt that defendant, at the place mentioned in the second count of the indictment, did assist and abet in keeping and maintaining a place and room in which intoxicating liquors were received and kept for the purpose of use, barter, or to be given away as a beverage, without having a permit to sell the same, you will find him guilty upon the second count. ’ ’
Counsel for Standish requested the court to instruct the jury that “anyone in the lawful and bona fide possession of beer may use it himself or may give it away without being guilty of a violation of the law, provided he does not give it away to evade any of the provisions of the prohibitory law. ’ ’
And also that, “the bona fide and honest giving away of intoxicating liquors by one who is lawfully *428 in possession of the liquors, is not a' violation of the law. ’ ’
These, last instructions were refused, and nothing similar to them was given.
Defendant was convicted, and in reversing the judgment the supreme court says:
‘ ‘ The instructions in this case, however, were not sufficiently limited to embrace the offense attempted to be described in the second count of the indictment, under the provisions of section 16 of the prohibitory act. They allowed the jury to find Standish guilty if he used the beer himself, or gave it away, although not done in violation of the statute, nor to evade any of the provisions thereof.”
In Reynolds v. The State, 73 Ala. 3, the defendant was indicted and convicted under a statute which made it “unlawful for any person or persons (except upon the written prescription herein provided for) to make, sell or otherwise dispose of any spirituous or malt liquors or other intoxicating drinks within the counties of Dale and Henry, state of Alabama.” The testimony was, that the defendant, at his private residence in Dale county, gave to a guest two or more drinks of spirituous liquor, to wit, whiskey. No point was made in the case on the question of a written prescription. The presiding judge instructed the jury that this constituted disposing of spirituous liquors within the statute. Held, that the act shown in evidence was not the disposing of liquor within the contemplation of the legislature.
In State v. Jones, 39 Vt. 370, defendant was indicted for selling, furnishing and ■ giving away .intoxicating liquor in violation of the statute. The statute is not given in the opinion of the court. The proof was, that defendant kept a hotel, and in connection therewith a bar; that he gave to a domestic servant at the bar three drinks of whiskey. Held, *429 not to be within the statute, as the servant was a member of defendant’s family. It also appeared from the evidence that, “at divers times,” defendant furnished whiskey to musicians whom he had hired to play at dances given at his hotel. Held, that as the musicians were not part of defendant’s family, these acts were within the statute. Judgment of the court below was reversed, however, for the reason that the words “at divers times” were omitted from the indictment, and the prosecution, over the objections of defendant, was allowed to introduce testimony tending to show a number of different offenses.
The only authority cited by appellant arising under a prohibitory law, wherein the facts are at all analogous to the facts in the case under consideration, is State v. Standish, supra. In that case it was in evidence that defendant kept the beer, which he used himself and gave away, in a back room or wareroom of a store building, and not in “a place of traffic or place of public resort.”
In all of the cases cited by appellant, the statutes under which the prosecution was had, so far as they appear in the opinions of the courts, used the words “give,” “give away,” “dispose of,” in connection with the words “barter,” “sell,” or “exchange, ’ ’ showing án evident intention upon the part of the law-making power to anticipate any attempt to evade the provisions of the law which those engaged in the liquor traffic might by any ingenuity invent.
In the ordinance under consideration, the words “selling” and “giving away,” are wholly disconnected from each other, and each is coupled with an •absolute prohibition, disclosing an.evident intention upon the part of the law-making power to not only prohibit the selling of liquor within the limits of the town, but also to prohibit the giving away of liquor *430 in certain designated places in the town, which intention was expressed in language which requires no construction or interpretation.
The court committed no error in his rulings upon the instructions given and refused.
Counsel for appellant contend that the ordinance was void, because on its face it attempted to enlarge the powers of the corporation beyond those conferred by the statute.
In construing section 2833 Mills ’ Ann. Stats., and sec. 4403, subdivision 18, Mills ’ Ann. Stats., in People v. Raims, 20 Colo. 489, 492, 493, the supreme court said:
“The above statutes give to an incorporated town The exclusive right to license, regulate or prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor within the limits of the town, or within one mile beyond the outer boundaries thereof, except where the boundaries of two towns adjoin.’ No authority need be cited to the effect that the regulation of the liquor traffic is purely a legislative power, and that it is also clearly within the power of the legislature to delegate to the municipal authorities the power to regulate, license or prohibit the sale of liquor within their own limits * # *. The legislature having the.right absolutely to prohibit such sales as defendant was making, has also the right to confer, and did confer, upon the county and upon the town the same power of prohibition.”
See also Black on Intoxicating Liquors, section 39, where it is said:
‘ ‘ And we may here remark that if the state has power to prohibit the sale of liquor, it has also power to prohibit the giving of liquor by one person to another. The evil to be avoided is the communication from one to another of an article which may be in *431 jurious to the recipient, or which, by its general use,' may demoralize or harm the whole community. It is1 not attempted to restrain a man’s private indulgence in drink. But that is because law deals not with the isolated individual, but with men in their relations to each other. Upon the delivery of a noxious substance from one to another, a relation is established of which the law may take cognizance. And it is perfectly immaterial whether the transfer be by sale,, barter, or gift. ”
In Powers v. Commonwealth, 90 Ky. 167, the defendant was convicted under an act of the-legislature of Kentucky which provides:
“It shall be unlawful for any person or persons to sell, barter, give, loan or traffic in spirituous, vinous or malt liquors, in any quantity whatever, within the county of Rowan. ’ ’
In the course of the opinion, the court said:
“Pie next contends that the statute is .unconstitutional in so far as it deprives a person of the right to give liquor to another, because by so doing it denies him the use of his property. If the sale may be forbidden, equally so may the gift of it. The law has the public welfare in view, and one may be as injurious to the public -as the other. It has long been the recognized and unquestioned law of this state that one cannot give liquor to a minor. The legislature may, looking to the public health, or its peace or morals, and in the exercise of the police power, forbid not only the sale, but the gift, of any article calculated to injure these public interests. The citizen acquires his property subject to this right upon the part of the law-making power. The individual right is thus qualified to secure the protection of the public. ”
Under the above authorities, it is manifest that *432 the enactment of the ordinance was clearly within the authority delegated the town by the legislature.
Statutes should be interpreted according to the most natural and obvious import of their language, without resorting to subtle or forced conclusions for the purpose of either limiting or extending their operation. — Dwarris on Statutes, 144.
When the meaning is plain, the law must be carried into effect according to its language, or the courts would be assuming legislative authority.
The words of the ordinance, the absolute prohibition of “selling” within the limits of the town, the absolute prohibition of “giving away” in certain designated places, including places of traffic and public resort, the manifest effort to prevent evasion upon the part of druggists, the penalties imposed, the inclusion of any and all intoxicating liquors, afford undoubted evidence of the design of the authorities of the town to make it a strictly prohibition town, according to the express terms of this ordinance, and according to the plain language thereof, which language cannot be misunderstood by anyone of ordinary or reasonable intelligence.
If the construction of the ordinance, as contended for by appellant, under the facts disclosed by the evidence should be adopted, every “place of traffic or public resort” in the town, upon the plea of hospitality or for the purpose of celebration, could be converted-into a free bar-room or dram-shop, and intoxicating liquors dispensed without let or hindrance. Such construction would render the ordinance a nullity.
Perceiving no error in the record, the judgment will be affirmed.

Affirmed.